**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

United States of America,

       Plaintiff,                    Case No.  1:19cr83

       v.                         Judge Michael R. Barrett

Delondo Henderson,

       Defendant.

## OPINION & ORDER

This matter before the Court upon Defendant Delondo Henderson's Motion to Suppress.  (Doc. 19).  The United States has filed a Response in Opposition (Doc. 20).  On February 8, 2021, a hearing was held on the Motion.  (Doc. 44).  Defendant filed a Post-Hearing Brief (Doc. 46); the United States filed a Response (Doc. 47); and Defendant then filed a Reply.  (Doc. 50).   The United States presented the testimony of Cincinnati Police Officers Andrew Burkett, Steven Rogers, and Jason Lindsey.  The Court also received body-cam video from various officers (DX1), an Incident Report (PX1, DX2), a Right of Entry Letter (PX2), Arrest and Investigation Report (DX3), Cincinnati Police Department Trial Preparation Report (DX4).

## I.    BACKGROUND

The United States has brought the following three counts against Defendant: possession of a controlled substance with intent to distribute in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(C); possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. 924(c); and possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 18 U.S.C. § 2.

On May 7, 2019, at approximately 9:40 p.m., Clarissa Johnson made a 911 call from the Shelton Gardens apartment complex at 2000 Westwood Northern Boulevard. Johnson is the mother of Defendant's children.  Johnson explained that Defendant had fired a gun at her.  Johnson provided the 911 operator with Defendant's name and date of birth.  One of the Cincinnati Police officers responding to the call ran this information through the Regional Crime Information Center ("RCIC") and determined Defendant had an open warrant.  (Doc. 45, PAGEID 127).

The body-cam video in the record shows Officers Burkett and Lindsey arriving at the Shelton Gardens apartment complex.  (DX1).  They met Johnson in the parking lot near an automobile.  Johnson stated that she and Defendant had been arguing about money, and when she turned and walked away, he fired a shot at her.  Johnson gave a detailed description of Defendant, explaining that he had long dreads, a colorful shirt, gold teeth, and was carrying a bookbag that may have resembled a purse.  (Doc. 45, PAGEID 130).  Johnson explained that Defendant was in the apartment building.

The Cincinnati Police Department has a Right of Entry Letter from Shelton Gardens's management which gives them permission to enter the property.  (DX2).  The body-cam video shows that the officers entered the building, went up of flight of stairs, proceeding through a hallway and down another flight of stairs.  The officers could hear people yelling and followed the sound to where they found Defendant at the rear entrance of the apartment complex.  (Doc. 45, PAGEID 133).  The body-cam video shows that Defendant matched the description provided by Johnson.

Officer Burkett began to arrest Defendant immediately.  (Doc. 45, PAGEID 148). Officer Burkett instructed Defendant to put the bag from his shoulder on the ground and

placed Defendant in handcuffs. (Doc. 45, PAGEID 148-149). As Defendant was being handcuffed, a firearm which was in plain view was recovered from the front of his pants. A second firearm was recovered from Defendant's back pocket. During the search, a brown lunch bag fell out of Defendant's pants and onto the ground. (Doc. 45, PAGEID 135). This bag contained a substance which was later determined to be heroin. (Doc. 45, PAGEID 184). Officer Lindsey searched the bag which had been on Defendant's shoulder and found digital scales, plastic baggies, and MiraLAX, which is commonly used as a cutting agent for drugs. (Doc. 45, PAGEID 152, 183).

Defendant was escorted to the parking lot and placed in the back of a cruiser. Officer Rogers advised Defendant of his *Miranda* rights and questioned him about his interactions with Johnson. Defendant denied her allegations and said that Johnson has a history of making false allegations.

Defendant was transported to Cincinnati Police District Three headquarters. Defendant was brought to an interview room. The video recording of the interview room shows that he waited for roughly twenty-five minutes before he was questioned by the officers. (Gov. Ex. 7, Interview Recording). The video recording shows that while he was waiting, Defendant became agitated and called out to the officers. Defendant said that he was dehydrated and feeling dizzy. (Doc. 45, PAGEID 191-192). Defendant asked for a medic. (Doc. 45, PAGEID 192). Defendant also asked to be taken to the Hamilton County Justice Center. (Doc. 45, PAGEID 193). Officer Lindsey responded and brought water for Defendant. After drinking the water, Defendant appeared to calm down, and Officer Lindsey determined it was not necessary to call for medical attention for Defendant. (Doc. 45, PAGEID 187).

In his Motion to Suppress, Defendant seeks to suppress the evidence obtained in a search of his person conducted by members of the City of Cincinnati Police Department. Defendant maintains his arrest was in violation of his Fourth Amendment rights because it was based on an unreliable and untrustworthy complaint lodged by Johnson. Defendant also argues that the search of the bag on his shoulder and the brown bag on the ground without a warrant or an exception to the warrant requirement violated the Fourth Amendment. In addition, Defendant argues that his recorded statement from the interview room must be suppressed. Defendant maintains that his statement was elicited from him in violation of the Fifth Amendment through coercive police behavior and without advising him of his constitutional rights, including the right against self-incrimination and the right to counsel, as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## II.  ANALYSIS

### A.  Fourth Amendment

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "It is a well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment." *United States v. Abdi*, 463 F.3d 547, 557–58 (6th Cir. 2006) (quoting *Ingram v. City of Columbus*, 185 F.3d 579, 592–93 (6th Cir.1999) (internal citation omitted). "However, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where the arrest is in public and there is probable cause to believe that a criminal offense has been or is being committed." *Id*. (citing *United States*

*v. Watson*, 423 U.S. 411, 417–24, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)). In determining whether probable cause exists, a court "may not look to events that occurred after the search or to the subjective intent of the officers;" instead, a court must look to "the objective facts known to the officers at the time of the search." *United States v. Haynes*, 301 F.3d 669, 678 (6th Cir. 2002) (citations omitted).

In this case, the United States maintains that because Johnson was an eyewitness to the crime, the officers had probable cause to arrest Defendant.

The Sixth Circuit has held that officers are "entitled to rely on an eyewitness identification to establish probable cause." *United States v. Amerson*, No. 93-6360, 1994 WL 589626, at *2-3 (6th Cir. Oct. 21, 1994). "Because eyewitness statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity." *United States v. Doyle*, 720 F. App'x 271, 276 (6th Cir. 2018) (quoting *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). However, "eyewitness allegations may fall short of creating probable cause absent some corroborating evidence of wrongdoing." *Id*. (quoting *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015)). However, "[p]robable cause is created only by eyewitness allegations that are *reasonably trustworthy*, and thus probable cause does *not* exist where there is an apparent reason for the officer to [discredit the witness]." *Id*. (quoting *Courtright v. City of Battle Creek*, 839 F.3d 513, 521-22 (6th Cir. 2016)); *see also United States v. Lanier*, 636 F.3d 228, 233 (6th Cir. 2011) ("[a]n eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken

regarding his recollection of the confrontation.") (quoting *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir.1999).

Defendant argues that Johnson was not a credible or reliable witness. Defendant cites the testimony of Officer Rogers, who stated that there were problems with Johnson's account because when she was questioned at the scene, she indicated that she did not actually witness the shooting because her back was turned. (Doc. 45, PAGEID 173). Defendant also points to Officer Rogers's testimony that he found Johnson's demeanor to be "overly dramatic" and he communicated that concern to the other officers. (Id.)

The Court finds that Officers Burkett and Lindsay had probable cause to arrest Defendant. When the officers arrived on the scene, Johnson confirmed the details of the 911 call. The body-cam video shows that Johnson gave a full and complete description of Defendant and explained that he had fired a gun at her. Officers Burkett and Lindsey then went into the apartment complex while Officer Rogers stayed in the parking lot and interviewed Johnson. (Doc. 45, PAGEID 171). What Johnson told Officer Rogers in the parking lot after Officers Burkett and Lindsay left to go inside is largely irrelevant. Officers Burkett and Lindsay had enough information to establish probable cause. Johnson had reported to both 911 dispatch and to the officers that shots had been fired as part of a domestic dispute between herself and Defendant. There was no apparent reason for the officers to believe that Johnson was lying. Moreover, before arriving on the scene, the officers knew that Defendant had an open warrant against him. As the Supreme Court has explained: "A warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions." *Utah v. Strieff*, 136 S. Ct. 2056, 2062, 195 L. Ed. 2d 400 (2016) (quoting *United States v. Leon*, 468 U.S.

897, 920, n. 21, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)).  Therefore, Defendant's motion to suppress related to his arrest is DENIED.

Despite the existence of probable cause to arrest, however, the search of the two bags also must be justified under an exception to the warrant requirement.  *See United States v. McCraney*, 674 F.3d 614, 618 (6th Cir. 2012).  The United States argues that under *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), law enforcement may conduct a search of a defendant "incident to arrest" which includes his physical person and the area "within his immediate control."

Defendant responds that the exception to the warrant requirement under *Chimel* does not apply here because he was restrained in handcuffs and could not reach either bag.  Defendant explains that as a result, there was no concern for officer safety or a danger of destruction of evidence.

However, as the Sixth Circuit has explained: "[W]hen a container is within the immediate control of a subject at the beginning of an encounter with law enforcement officers; and when the officers search the container at the scene of the arrest; the Fourth Amendment does not prohibit a reasonable delay, such as the one in this case, between the elimination of the danger and the search."  *United States v. Dillard*, 78 F. App'x 505, 513 (6th Cir. 2003) (upholding search of briefcase the defendant was carrying before he struggled with police and was arrested) (quoting *United States v. Han*, 74 F.3d 537, 543 (4th Cir.), *cert denied* 517 U.S. 1239, 116 S.Ct. 1890, 135 L.Ed.2d 184 (1996)); *see also Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001) (allowing the search of a duffel bag after the defendant had removed the bag from his shoulder, placed it at his feet, and was already arrested).  Here, even though Defendant was handcuffed and the bag from

7

Defendant's shoulder and the brown bag on the ground were not near Defendant at the time of the search, the bags were subject to a search incident to Defendant's arrest. The search of the bags was conducted by Officer Lindsey at the same time that Officer Burkett was searching Defendant. (Doc. 45, PAGEID 136). The Court concludes that the search of the bags was a valid search incident to arrest. Therefore, Defendant's motion to suppress related to the search of the bags is DENIED.

### A. Fifth Amendment

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amend. V. Under the Fifth Amendment, a suspect is guaranteed the right to remain silent and the right to the assistance of counsel during a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1986). As the Supreme Court has explained: "Even absent the accused's invocation of the right to remain silent, the accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused "in fact knowingly and voluntarily waived [*Miranda*] rights" when making the statement. *Berghuis v. Thompkins*, 560 U.S. 370, 382–83, 130 S. Ct. 2250, 2260, 176 L. Ed. 2d 1098 (2010) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)). The waiver inquiry "has two distinct dimensions." *Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). First, the waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Second, the waiver must "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* In conducting this inquiry, the Court must assess "the totality of all the surrounding

8

circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S. Ct. 2041, 2047, 36 L. Ed. 2d 854 (1973); *see also United States v. Hampton*, 572 F. App'x 430, 433 (6th Cir. 2014) ("Specifically with respect to inquiring as whether the waiver was knowing and intelligent, courts consider the defendant's age, education, intelligence, prior experience with the criminal justice system, the length and nature of the questioning, the advice regarding *Miranda* rights, and the use of physical punishment, such as deprivation of food or sleep.") (citing *Murphy v. Ohio*, 551 F.3d 485, 511 (6th Cir. 2009)).

The United States argues that Defendant was not coerced, and his admissions, made after waiving his rights under *Miranda*, were constitutional. However, Defendant explains that by asking to be taken to the Hamilton County Justice Center he invoked his right to silence pursuant to *Miranda*, and Officer Lindsey should not have initiated questioning. Defendant also maintains that he was under the influence of alcohol, which prevented him from waiving his *Miranda* rights knowingly, intelligently, and voluntarily.

Officer Lindsey testified that after Defendant's arrest, he escorted Defendant to the police cruiser in the parking lot. (Doc. 45, PAGEID 155). Officer Lindsey stated that Defendant smelled of alcohol. (Doc. 45, PAGEID 155). However, there is nothing in the record which would indicate that Defendant was intoxicated. On the video from the interview room, Defendant's speech is coherent and his thoughts are clear. Defendant is alert and cooperative. Defendant is clearly upset, but this is an indication that he understood the gravity of the situation and was aware of what was happening. Therefore, even if Defendant was intoxicated at the time, there is no evidence that he could not understand his rights or that he was waiving them. *Accord United States v. Hamilton*,

9

445 F. App'x 841, 843–44 (6th Cir.2011) (upholding denial of motion to suppress in light of testimony that the intoxicated defendant "was alert, cooperative, and able to form questions while at the police station"); *United States v. Montgomery*, 621 F.3d 568, 573 (6th Cir. 2010) (finding that even though the defendant claimed he was impaired following his *Miranda* waiver, he was "alert, coherent, and lucid" and therefore his waiver was knowing and voluntary).

The video from the interview room shows that Defendant stated three times that he wanted to be booked at the Hamilton County Justice Center. (Gov. Exh. 7, 13:10; 14:30; 14:49). *Miranda* itself explains: "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." 384 U.S. at 473–74, 86 S.Ct. 1602. While Defendant may have stated that he wanted to be taken to the Justice Center, he did not state that he did not want to answer questions.[1] Therefore, the Court concludes that Defendant knowingly and voluntarily waived his *Miranda* rights.

## III. **CONCLUSION**

Based on the foregoing, Defendant's Motion to Suppress (Doc. 19) is **DENIED**.

**IT IS SO ORDERED.**

> */s/ Michael R. Barrett*
> Michael R. Barrett, Judge
> United States District Court

---

[1]Instead, Defendant can be heard on the video that he did not want to be in "a room like this" because he was claustrophobic. (Gov. Exh. 7, 14:26 to 14:30).